Argued May 24; affirmed July 11, 1933

DOUMITT *v.* DIEMER ET AL.

(23 P. (2d) 918)

*Floyd D. Moore* and *Clarence A. Potts,* both of Portland, for appellant.

*James A. Powers,* of Portland (Senn & Recken, of Portland, on the brief), for respondents.

BEAN, J. The record shows that Diemer & Butler were engaged in the X-ray business in Portland, Oregon. They were incorporated under the laws of the state of Oregon and their business was principally that of taking X-ray pictures and using the X-ray machine, giving heat and light treatments and diathermy. Whether Diemer & Butler engaged in the general practice of medicine individually or otherwise, outside of the use of the X-ray machine, does not appear.

The plaintiff is married and became afflicted with tubercular glands of the neck. Upon the advice of Dr. Rockey she went to Diemer & Butler for X-ray exposure. The testimony shows that Frank E. Butler, though a regularly licensed physician of the state of Oregon, was only an officer of Diemer & Butler, a corporation. He had practically nothing to do with the treatment of plaintiff and did not administer any of the treatment. Mrs. Folkland, the technician, gave all the treatments. It appears that the tubercular condition of plaintiff's gland was, as termed, arrested by the X-ray treatments, but that a scar was left upon her neck. She was sent to a sanatorium to be treated for her tubercular condition, when Dr. Matson found that she was pregnant.

The court directed a verdict on the following grounds: First, that it appeared specifically that the statute of limitations had run against this action; second, that the testimony showed Diemer & Butler were a corporation, that they had filed their articles of incorporation and the same were of record, that this was notice to all persons that they were operating as a corporation, that there was no evidence in the record that they held themselves out as partners, that they were engaged in the application of the X-ray and that in doing that work they could perform that work as

a corporation; third, that there was no evidence upon which the court could say that the scar of which plaintiff complained was the result of the X-ray treatment, that the testimony developed that the breaking down of the tubercular glands would itself cause a scar, regardless of the X-ray treatment, and whether this came from the administration of the X-ray treatment or whether it came from the disease of tubercular glands was left wholly to speculation and conjecture.

First, taking the question as to whether plaintiff brought action against the right party, it appears that Diemer & Butler were regularly incorporated under the laws of the state of Oregon by articles of incorporation filed on the 17th of January, 1923, with the principal office at Portland, Oregon. The business, pursuit or occupation of the corporation, among other things, was to carry on the theory and practice of "Roentgenology, Radiation, Therapy, * * *".

■ Plaintiff assigns that the court erred in holding that the defendants were incorporated, and contends that doctors cannot incorporate; that the practice of medicine consists in judging the nature, character and symptoms of the disease, determining the remedy and giving or prescribing the application of the remedy. In this case it appears that the plaintiff applied to Dr. Rockey in regard to her ailment and that Dr. Rockey advised her to go to Diemer & Butler for X-ray treatment. The use of the X-ray machine or electrotherapy, under the facts of this case, does not necessarily constitute the practice of medicine. Section 68-2118, Oregon Code 1930, provides that the act of requiring a license to practice medicine and surgery "shall not be construed to affect or prevent the following: * * * (15) the practice of physiotherapy, electrotherapy or hydrotherapy carried on, by or under the direction

of duly licensed practitioners of medicine and surgery or osteopathy and surgery or chiropractic, or any other method of practice which may hereafter become legalized in this state".

■ We think that it is competent for parties to incorporate and for the corporation to carry on the business of using the X-ray or electrotherapy or Roentgenology. When the defendant Butler pleaded in his answer that the X-ray machine was used in treating plaintiff by the corporation, duly incorporated under the laws of the state of Oregon, the plaintiff was apprised that "Diemer & Butler" was a corporation, and that the X-ray machine was operated by Mrs. Folkland. Plaintiff was fully aware of the situation and could have changed her pleading. For a long time prior to that time the articles of incorporation were on record. It appears from the record, without contradiction, that Mrs. Folkland, an employee of the corporation, was the technician who operated the X-ray machine and was paid by the corporation. We concur in the finding of the learned trial court that defendants "Diemer & Butler" were a corporation and that there was no evidence in the case that Diemer & Butler held themselves out as partners in the practice of medicine. While operating this X-ray machine the defendant corporation was employed in operating a mechanical device which may be operated by any one without a license from the state, provided it is under proper supervision.

■ Plaintiff assigns error of the court in holding that there was no evidence upon which the court could say that the scar of which plaintiff complained was the result of the X-ray treatment.

Dr. Marr Bisaillon, a witness for plaintiff, and a medical practitioner, testified, in substance, that he

had had experience in treating tuberculosis and was a co-medical director, with other associates, of the Open Air Sanatorium at Milwaukie, to which plaintiff came in December, 1923; that she then stated she had enlarged cervical glands for the past three years; that she had taken X-ray treatments for her enlarged glands for the past two months; that he aspirated the gland on the 7th day of the next April. On being asked what influence the X-ray had on the gland, he answered:

"A. I was unable to say that, excepting that we see glands that are softened that have no X-ray treatment at all and some that get hard that have X-ray treatment, some that entirely disappear that have X-ray treatment. It all depends on what happened in their development, when they happen to be treated by the X-ray, as to what they are going to do.

Q. Does the X-ray cause a breaking down of the gland?

A. No, one could not say that, because we have seen hundreds of them break down that have never seen an X-ray. In fact, they frequently do that."

He further testified that the X-ray treatment is an approved treatment for tubercular glands. Upon being asked what she was sent to the sanatorium for, Dr. Bisaillon stated:

"A. Treatment for her tuberculosis, and the fact that she was also pregnant at that time, that is when she came in, and I advised her to go to the sanatorium on account of the fact that tuberculosis in a pregnant woman is a rather serious thing and that she should have attention to her general tuberculosis which existed in her instance, not only here; it was throughout her whole body. * * *"

"Q. Was she sent to the sanatorium because of any effect that the X-ray treatment had had on her?

A. Oh, no. She was sent for treatment for tuberculosis. * * *

Q. Not on account of anything that the X-ray did?
A. No. We have nothing to do with that."

The testimony of Dr. Bisaillon clearly shows that it was impossible for him to tell whether the scar was caused by the tuberculosis or by the use of the X-ray. We find no contradiction of this testimony and think the court was warranted in finding that there was no evidence upon which the court or jury could say that the scar, of which plaintiff complained, was the result of the X-ray treatment. The testimony developed that the breaking down of the tubercular glands would itself cause a scar, regardless of the X-ray treatments, and whether this came from the administration of the X-ray treatments or whether it came from the disease of tubercular glands was left wholly to speculation and conjecture.

■ In a case where the testimony shows plainly that there are two or more causes, for one of which the defendant is liable and the other he is not, and the matter is left to mere speculation and guess, the case should not be submitted to the jury. *Merriam v. Hamilton,* 64 Or. 476 (130 P. 406); *Spain v. O.-W. R. & N. Co.,* 78 Or. 355 (153 P. 470, Ann. Cas. 1917E, 1104); *Lippold v. Kidd,* 126 Or. 160, 169 (269 P. 210, 59 A. L. R. 875). In *Merriam v. Hamilton,* supra, the rule was announced in a malpractice case, as shown by the syllabus, as follows:

"Where there are two possible causes of an injury, for one of which defendant is not responsible, plaintiff to recover must show that the injury was wholly or partly the result of the cause for which defendant was liable, and, if the evidence leaves it as probable that the injury was the result of one cause as much as the other, he cannot recover."

In *Spain v. O.-W. R. & N. Co.*, supra, plaintiff had been thrown in jail at Huntington, Oregon. He had had his arm amputated before that and after his release from jail infection set in and it was claimed the filthy condition of the jail caused the infection. The testimony developed that it might have come from this cause, but that it might have also come from other causes. The court held:

"When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration: Armstrong v. Town of Cosmopolis, 32 Wash. 110 (72 P. 1038)."

■■ The manipulators of X-ray machines, in the use thereof, are to be measured by the standard of care, skill and diligence that would be exercised by a physician and surgeon of ordinary care, skill and diligence under the same circumstances and conditions, regardless of locality. *King v. Ditto*, 142 Or. 207 (19 P. (2d) 1100, 1102), and cases there cited. Nevertheless it is necessary for plaintiff to prove that the negligent use of the X-ray machine was the proximate cause of the injury of which plaintiff complains.

We think the trial court directed the verdict on the two substantial grounds which we have mentioned. It is therefore unnecessary for us to consider the other assignment of error.

It follows that the judgment of the circuit court must be affirmed. It is so ordered.

Rossman, Campbell and Bailey, JJ., concur.