Argued April 21; affirmed June 8, 1943

# PARKER v. PETTIT

(138 P. (2d) 592)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Frank S. Senn,* of Portland (Senn & Recken and Arthur E. Prag, all of Portland, on the brief) for appellant.

*Barnet H. Goldstein,* of Portland, for respondent and cross-appellant.

BELT, J. This is an action to recover damages for personal injuries sustained as a result of the alleged negligence of the defendant physician and surgeon, in leaving a piece of gauze packing in plaintiff's head for approximately five months after a surgical operation. It is charged that defendant's failure to remove such gauze was the proximate cause of infection resulting in: (1) The loss of her left eye; (2) pus eruptions and deep cavity below left eye socket; and (3) "great pain, mental anguish, and discomfort." Defendant, in his answer, admits having performed a surgical operation upon plaintiff to remove a growth, but denies generally the other allegations of the complaint.

The cause was submitted to a jury and a verdict returned against defendant in the sum of $20,000, it being specified therein that $10,000 of such award was allowed plaintiff "for loss of sight of her eye." Thereafter defendant filed a motion for judgment in his favor notwithstanding the verdict or, in the alternative, that judgment be entered eliminating therefrom any damages for loss of the sight of the eye. The trial court, in response to such motion, set aside the judgment against defendant for $20,000 and entered one against him in the sum of $10,000, it being the opinion of the court that there was no evidence tending to show that the alleged negligence was the proximate cause of the loss of the eye. Defendant appeals from such judgment. The plaintiff cross appeals asking that the original judgment of $20,000 be reinstated.

The defendant, Dr. Joseph A. Pettit, is a physician and surgeon who has practiced his profession in the city of Portland for about 35 years. He specializes in surgery and is a member of the staff of surgeons in St. Vincent's hospital. In July, 1940, the plaintiff, a

woman 54 years of age and in apparently good health, consulted him about what she thought was a growth or cyst on the inside of her nose. X-ray pictures taken in July and August showed a tumor in the antrum and indicated that it was slowly growing, but it could not be ascertained from the pictures whether the tumor was malignant or benign. Defendant recommended surgery and, on October 3, 1940, an operation was performed in St. Vincent's hospital to remove the tumor from the interior of the left antrum. During the operation, a specimen of tissue was submitted to Dr. Thomas D. Robertson, pathologist, and his report showed that plaintiff had a basal cell type of cancer—i. e., a low-grade cancer which had invaded the bone or roof of the antrum. The cancer was removed and, in view of the pathological report, the operation was more extensive than had been anticipated, it being necessary to remove much of the channel bone between the antrum and the nose and some of the bone constituting the roof of the antrum which is also the floor of the orbital cavity. The defendant testified in effect that, since the cancerous cells were ascending in the bone of the antrum, he removed some of the bone but did not go into the orbital cavity on account of the serious consequences to the eye and cheek bone. Later it was decided, in view of the type of cancer and its location, to use radium to kill the remainder of the cancer cells. Dr. Pettit admits having used gauze packing in the operation but asserts positively that it was removed when the operation was completed and he is corroborated in this respect by other witnesses who assisted him.

On October 7, 1940, Dr. Otis B. Wight, who for many years has specialized in radium therapy, inserted a .50 milligram radium capsule in plaintiff's

antrum and left it there for a period of 48 hours. Dr. Wight testified that, when this treatment was completed, the capsule and gauze packing surrounding the same were removed in the presence of the defendant. He says the antrum was then free of any gauze packing. Dr. Wight testified at length explaining the nature of radium therapy and stated that its rays would not only kill cancer cells but also other cells and tissue within a certain radius. It was his opinion that the radium treatment would not only damage the bone of the orbital cavity but would probably result in the loss of the eye. The testimony shows that cancer of the antrum is rare and the rate of mortality in such cases is extremely high. It is fair to assume that Dr. Pettit and his assistants were primarily concerned with curing the cancer. If the cancer were not cured, the loss of the eye would be of secondary importance.

Plaintiff left St. Vincent's hospital on October 11th and, during the remainder of the month and in November, she was treated by the defendant who irrigated the antrum. She was becoming progressively worse and it was decided that such treatment could better be given to her at the Coffey hospital in the city of Portland. She entered that institution on December 3d, 1940, and remained there until January 3d, 1941, when she returned home. While in the Coffey hospital her eye became so swollen and inflamed that, at the defendant's suggestion, Dr. Ralph A. Fenton, an eye, ear, nose, and throat specialist of many years' experience, was called into the case. It was decided that the plaintiff should return to St. Vincent's hospital for deep X-ray therapy to be administered by Dr. Sherman A. Rees, a radiologist who has been in charge of such work at the hospital since 1928. She was given five X-ray treatments be-

tween January 8th and January 13th and left the hospital on the 25th of the month. The eye was in a serious condition at this time, necrosis of the bone having progressed rapidly, and there was a profusion of foul pus. The defendant admits that he may have used gauze packing during this period of treatment to aid in drainage of the pus.

After leaving the hospital, plaintiff called regularly at the office of Dr. Fenton for treatment of her eye. On March 1st, he examined the eye and looked into the antrum, which is about the size of a large walnut, "to see whether there were any fragments of bone which might be loose", as a result of the radium treatment. He discovered a piece of gauze packing one-half inch wide and four or five inches long. It was "wadded up pretty solid, because it was packed in there tight" and was covered with pus having a "terrible odor." He said that Dr. Pettit had not informed him about the gauze packing and that he was very much surprised to find it. The patient desired the piece of gauze to show Dr. Pettit but Dr. Fenton very properly ordered it destroyed. Plaintiff said that, after the gauze was removed, she was able to again breathe through the left nostril. Dr. Fenton, in response to a hypothetical question, testified that it was not proper practice thus to leave a piece of gauze packing in the operative area for a period of five months, "or thereabouts."

On March 5th, Dr. Fenton performed an operation at the Coffey hospital, removing plaintiff's left eye. He said that, at that time, "there was no cancer, it had all been killed." It was his opinion that the loss of the eye was caused by the radium and not by the infection resulting from the gauze packing. His conclusion as to the cause of the loss of the eye is supported

by all the other medical experts, with the exception of one who testified on behalf of the plaintiff and whose testimony will be considered later.

■ There is substantial evidence that defendant's failure to remove the gauze caused plaintiff much pain and suffering and she is entitled to compensation therefor, even though it may not have been the cause of the loss of the eye. Plaintiff sustained damage aside from the loss of the eye. It would be difficult for any reputable physician or surgeon to justify knowingly leaving gauze in an operative area for a period of months as it would, undoubtedly, be a cause of infection. Defendant's failure to remove the gauze can only be attributed to the fact that he did not know it was there. The gauze was found by Dr. Fenton and there is no suggestion that any person other than the defendant put the gauze in plaintiff's antrum.

The vital question in the case is whether the plaintiff is entitled to compensation for the loss of her eye. Was the alleged negligence of the defendant in failing to remove the gauze the proximate cause of the loss of the eye? If it was not, even though negligence be established, the award of $10,000 for the loss of the eye cannot be sustained.

■■ We approach this phase of the case mindful of the fundamental principle that the court cannot substitute its opinion on questions of fact for that of the jury. Neither are we permitted to pass upon the credibility of witnesses. If there is any substantial evidence tending to show that the alleged negligence of the defendant was the proximate cause of the loss of the eye, the finding of the jury in reference thereto is conclusive.

■■ We agree with plaintiff that defendant was not entitled to a directed verdict and, therefore, under

§ 6-707, O. C. L. A., as amended by chapter 309, Laws of Oregon 1941, it would not have been proper to allow the motion for judgment notwithstanding the verdict. However, the damages were segregated in the verdict and, if there was no substantial evidence to support that part thereof awarding compensation for loss of the eye, the court had the authority so to correct the judgment.

Dr. David Nelson is the sole expert witness for the plaintiff. He is a registered and licensed physician in the state of Oregon, having practiced in Portland for many years. During the past three or four years, however, he has not been active as he maintains no office, except in his home, and has no telephone. Dr. Nelson was in California in 1935 and did not practice. "Q. * * * Did you practice in 1936? * * * A. That is nobody's business but mine, whether I practiced in 1936. * * * Q. Were you practicing in 1937? A. I don't know whether I was or not. I imagine I was. * * * Q. Were you practicing in 1938? * * * A. I was working for the government. * * * Q. What were you doing? A. I was surgeon. * * * Q. What did you do in 1939? * * * A. Surgery, anything that came about." The same in 1940 and 1941, but he said that the county hospital took over all the work in his neighborhood and "there isn't much left for me to do."

Dr. Nelson testified that he had much experience with the treatment of cancer and that three or four years ago he performed an operation on the throat for cancer, at his home, using a local anesthetic, as that "was not at all uncommon for an ear, nose, and throat man." He did not have any nurse to help him, as he said he did not require one.

Dr. Nelson, who examined the plaintiff in the latter part of March, 1941, in order to qualify as an expert witness, testified in reference to the cancer, "I don't believe there ever was a cancer there," and that he did not believe in radium or X-ray therapy for treatment of cancer, although he confesses never having used the same in his practice. On direct examination, in response to a hypothetical question, Dr. Nelson stated positively that the gauze packing was the cause of the loss of the eye and that radium had nothing to do with it. On cross examination, however, he thus testified:

"Q. Well, now, what damage would the radium do in this case? A. Any active cancer—

\*     \*     \*     \*     \*

"Q. What damage does it do? A. Well, it would destroy the eye in that condition—in that place.

"Q. Destroy the eye and destroy the bone around it? A. Yes."

On re-direct examination, the doctor said:

"Q. Doctor, in determining the effect of radium, does it not depend to a large extent upon the quantity of radium used? A. The quantity of radium used, and the length of time it is used.

"Q. And the seriousness of it is affected by both these situations? A. Yes."

We have no desire to be unkind to Dr. Nelson and will pass his testimony without comment, being content to let the record speak for itself.

■■ Proximate cause is ordinarily a question of fact for the jury: 38 Am. Jur. 1060; 45 C. J. 1318. However, the proximate cause of damages must be established with a reasonable degree of certainty. Damages which are uncertain or speculative are not recoverable either in actions ex contractu or ex delicto: 15 Am. Jur.

410. No recovery can be had where resort must be had to speculation or conjecture for the purpose of determining whether the damages resulted from the act of which complaint is made or from some other cause. This well-established rule is thus stated in 45 C. J. 1167:

> "Where the injury may have resulted from one of several causes and defendant is liable for only one or more of them, but not for all, plaintiff must prove that a cause for which defendant is liable produced the result."

In 38 Am. Jur. 1034, it is said:

> "Where the proof of causal connection is equally balanced, or the facts are as consistent with one theory as with another, plaintiff has not met the burden the law casts upon him."

That this court has given its approval to the rule above stated, see: *Merriam v. Hamilton*, 64 Or. 476, 130 P. 406; *Lippold v. Kidd*, 126 Or. 160, 269 P. 210, 59 A. L. R. 875; *Doumitt v. Diemer et al.*, 144 Or. 36, 23 P. (2d) 918.

■ Has it been established with reasonable certainty that leaving the gauze packing in plaintiff's antrum was the cause of the loss of her eye? Or was such damage caused by the radium treatment? Defendant is not charged with negligence in administering the radium. He would not, therefore, be responsible for any damage to the eye by reason of the use of radium to kill the cancer. The evidence viewed in the light most favorable to plaintiff is that the loss of the eye might, with equal probability, be caused either by the gauze or the radium. The testimony of Dr. Nelson concedes that such is true and the evidence on behalf of the defendant is that the gauze had nothing whatever to do with such damage. Under that state of the record the jury was left only

to speculate as to that phase of the case. Hence the plaintiff was not entitled to the award of $10,000 for loss of the eye and the court was right in eliminating such sum from the judgment.

■ Error ·is predicated on refusal of the court to give the following requested instruction:

"You are hereby instructed that if the damage is evenly balanced as to whether the damage done was caused by the gauze or by the use of radium, then your verdict must be for the defendant."

We think the above request was covered by the instruction given by the court that:

"If you find that the damage done to the plaintiff was caused by radium and not by gauze left in plaintiff's head, then the plaintiff cannot recover and the verdict must be for the defendant."

The judgment of the lower court is affirmed.