Argued and submitted July 24, affirmed September 13, 2023

## In the Matter of C. E. S.,
### a Child.
## DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

## C. E. S.,
*Appellant.*

### Clackamas County Circuit Court
### 19JU00942; A180562

536 P3d 1089

This appeal arises from a judgment terminating dependency jurisdiction and wardship. Petitioner challenges the court's denial of her motion, made after she turned 18, for an order directing DHS to destroy health records about her that it had collected and maintained in its dependency file while acting as her legal custodian. On appeal, petitioner asserts that the juvenile court erred in not protecting her interests when it declined to order the destruction of health records in DHS's possession as it closed the dependency case. DHS countered that the juvenile court was without authority to order the destruction of those records because they are public records subject to statutory retention requirements. *Held*: The trial court did not err. The records are public records subject to statutory retention requirements.

Affirmed.

Heather Karabeika, Judge.

Ginger Fitch argued the cause for appellant. Also on the brief was Youth, Rights & Justice.

Dustin E. Buehler, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and Armstrong, Senior Judge.

MOONEY, P. J.

Affirmed.

**MOONEY, P. J.**

C was made a ward of the juvenile court when she was 14 years old because there were conditions and circumstances in her parents' home that endangered her welfare, ORS 419B.100(1)(c). Shortly after she turned 18, C and the Department of Human Services (DHS) both moved the court for an order dismissing jurisdiction and terminating wardship under ORS 419B.328(2)(c). The court granted those motions. C also asked the court to (1) order DHS to provide her with her health records and to (2) destroy "any remaining copies, digital or otherwise[.]" The juvenile court ordered DHS to provide C with a copy of the health records it had in its case file, but it denied C's request for an order directing DHS to destroy any health records remaining in its possession. C appeals from the juvenile court's order and judgment terminating jurisdiction, assigning error only to the court's (1) denial of her request for an order directing DHS to destroy records and, in the alternative, to the court's (2) failure to seal the health records still retained by DHS. DHS responds that C's records qualify as public records that DHS was required to retain under the public records law and that, in view of that retention requirement, the juvenile court lacked authority to order DHS to destroy the records. DHS argues further that C did not preserve the argument that the court should order the records sealed. We agree with DHS on both points. We conclude that the juvenile court did not err in denying the request for an order requiring DHS to destroy health records. We decline to reach the unpreserved question of whether the court should have ordered the remaining health records sealed, with this explanation: C did not ask the court for an order sealing the records and she did not develop that issue, factually or legally, when the possibility of sealing the records was raised by the court. We affirm.

C argues that "health records created during her wardship belong to her." She contends that because she asserted her privacy interest in those records when she moved to have wardship terminated, she was still a ward of the court whose interests the court was obligated to protect. The court's refusal to order DHS to destroy the remaining

health records in DHS's file was, according to C, a failure of the court to protect her interests and, therefore, it constituted legal error. DHS counters that the health records in its case file are public records subject to retention according to state retention guidelines. DHS argued then, and now, that the juvenile court was without authority to order destruction of those records.

Whether the juvenile court has authority to order the destruction of health records collected and maintained by DHS in the course of its work as C's legal custodian is a legal question which we review for legal error. *See Dept. of Human Services v. T. B.*, 326 Or App 192, 194, 531 P3d 718 (2023) ("Whether the juvenile court has authority to make a particular order is reviewed for legal error."). If we determine that the juvenile court has authority to issue such an order, we review that order for abuse of discretion. *Id.*

C points to no statutory provision that gives her a possessory or other ownership interest in the health records in DHS's case file. There is no question that she has a privacy interest in the personal health information contained within those records. DHS does not dispute that. But the existence of a privacy interest in personal health information is not the same as a possessory or other ownership interest in records that contain that information. The parties did not create an evidentiary record on the motion for destruction of records and, thus, the exact nature of the records in question is not entirely clear. As framed by the parties, we understand that the records contain information about medical and mental healthcare conditions for which C received care and treatment while she was a ward of the court and records created by third-party healthcare providers that were provided to DHS as C's legal custodian and made a part of DHS's dependency file on C. Thus, it is the collection of third-party health records maintained by DHS in its case file that C sought to have destroyed.

C argues that because the health records were not created by DHS, they are not "the property of [DHS]," and now that C has reached the age of majority, they should be turned over to her without DHS retaining any copies. But C did not create the health records in question any more than

DHS did. The records are about her, but they were created by her healthcare providers, who are generally required to maintain such records for each of their patients, as a matter of licensure. For example, the Oregon Health Authority requires licensed hospitals to maintain medical records for every patient admitted to a hospital for care. OAR 333-505-0001; OAR 333-505-0050; *see also Classen v. Arete NW, LLC*, 254 Or App 216, 232 n 2, 294 P3d 520 (2012) (discussing record-keeping standards required of licensed physicians). C's contention that health records that are about her "are her individual records" and, thus, belong to her does not square with the fact that such records are created by her providers for their own business and licensure purposes. C undoubtedly benefits from the existence of those records in terms of any ongoing care she receives from her providers, and she clearly has a privacy interest in the information contained in those records, but that does not confer possessory rights upon her.

C's privacy interest is significant, and there is no dispute that state and federal laws exist to protect her interest in the personal health information contained within health records created and maintained by her healthcare providers. But such laws protect a patient's privacy interests by prohibiting the unlawful disclosure of health records; they do not transfer ownership of the records to the patient.[1] It is important to note that C does not claim that DHS came into possession of the health records by unlawful means. Indeed, there is no dispute that, in the course of its work investigating reports of child abuse, filing petitions to establish dependency jurisdiction, carrying out its duties as legal custodian for children made wards of the court, planning for permanency, and facilitating transitions leading up to

---

[1] For example, ORS 192.553(1) provides:

"It is the policy of the State of Oregon that an individual has:

"(a) The right to have protected health information of the individual safeguarded from unlawful use or disclosure[.]"

Also, ORS 192.553(2) expressly recognizes that the federal Health Insurance Portability and Accountability Act (HIPAA) establishes "additional rights and obligations regarding the use and disclosure of protected health information and the rights of individuals regarding the protected health information of the individual." HIPAA restricts a "covered entity" from using "protected health information" without the "written authorization of the individual." 45 CFR § 164.512(a).

and including the final plan, DHS is required to obtain a wide variety of highly confidential records, including health records, and to maintain those records in its case files along with its own records and reports. In short, there is no dispute that DHS was in lawful possession of the records C sought to have destroyed.

The issue, then, is whether the juvenile court had authority to direct DHS to destroy health records that were lawfully disclosed to DHS while it was serving as C's legal custodian. C's health records, as collected and maintained by DHS, qualify as public records under ORS 192.005(5)(a) because they include "information" that:

"(A)  Is prepared, owned, used or retained by a state agency or political subdivision;

"(B)  Relates to an activity, transaction or function of a state agency or political subdivision; and

"(C)  Is necessary to satisfy the fiscal, legal, administrative or historical policies, requirements or needs of the state agency or political subdivision."

C does not dispute that the health records in DHS's file fulfill the requirements of (A) and (B) because they were used and retained by DHS in the course of its functions as a state agency. C disputes only that the records continue to be necessary for DHS to satisfy its official functions because jurisdiction is now dismissed, and she is no longer a ward of the court and is no longer in DHS's legal custody. But Oregon's public records law expressly acknowledges that the state has "a responsibility to ensure orderly retention and destruction of *all* public records, *whether current or noncurrent*, and to ensure the preservation of public records of value for administrative, legal and research purposes." ORS 192.001(1)(c) (emphases added). Thus, regardless of whether the health records maintained in DHS's dependency file concerning C's wardship are ever used again by DHS in the scope of its official work, they are public records subject to retention by the state.

C is understandably concerned about maintaining her privacy. Now that the DHS case is closed, she wishes to prevent the release of her childhood health records,

maintained by DHS, to any other person or entity. Oregon's public records law already exempts health records from disclosure "if public disclosure would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy." ORS 192.355(2)(a). We acknowledge that, by its terms, that exemption is not absolute, and DHS does not say that it will never seek to disclose the health records in its file on C. But the burden of proof required to overcome the exemption builds in a significant evidentiary barrier that would protect C's privacy interest in the face of a request for the health records in question.

C's reliance on *Dept. of Human Services v. E. J.*, 316 Or App 537, 504 P3d 1262 (2021), *rev dismissed*, 370 Or 740 (2023), does not support her position that the juvenile court had the authority to order the destruction of records in DHS's possession. In *E. J.*, we held that DHS could not defeat the privilege that attaches to certain juvenile court records concerning a ward's "history and prognosis" under ORS 419A.255 simply because the records in the court's files originated from "its own files that it still possesses." *Id.* at 550. In the context of this case, *E. J.* supports the idea that possession of health records alone does not defeat or override important protections, such as privilege and confidentiality, that might apply to such records. But neither *E. J.* nor ORS 419A.255 support C's request for an order directing DHS to destroy records. Therefore, the court did not err in declining to order their destruction.

Notwithstanding the absence of statutory authority for an order requiring the destruction of health records that are public records maintained in DHS's case file, C argues on appeal that such authority may be inferred from ORS 419B.343(4) and OAR 413-030-0460. C did not raise that argument before the juvenile court. But even if she had, ORS 419B.343(4) simply provides that DHS's case planning efforts must include "health and education records of the ward[.]" It mentions nothing about the retention or

destruction of health records. OAR 413-030-0460(2), like-wise says nothing about the destruction of public records. It does list the type of "written records" that DHS must "provide" to a ward who "reach[es] independence." OAR 413-030-0460(3) also requires DHS to "retain the records" and to provide them to the ward at a later time "when the whereabouts of the *child* or *young adult* are unknown[.]" (Emphases in original.) But, again, the obligation to keep records for a particular purpose says nothing about whether and when such records might be destroyed.

C also belatedly raises ORS 419A.269(4) in support of her argument that the court erred in not ordering the destruction of DHS records. But ORS 419A.269(4) autho-rizes the juvenile court to order the destruction of records in the context of expungements. We decline, on this limited record, to address that argument beyond noting its lack of preservation and relevance.

Affirmed.